**In re JONES TRUCK LINES, INC., an Arkansas Corporation, Debtor.**

**JONES TRUCK LINES, INC., Plaintiff,**

v.

**FOSTER'S TRUCK AND EQUIPMENT SALES, INC., Defendant.**

**Bankruptcy No. 91–15475M.**
**Adv. No. 93–8700.**

United States Bankruptcy Court,
W.D. Arkansas,
Fayetteville Division.

May 13, 1994.

Troy Price, Charles T. Coleman, James J. Glover, Wright, Lindsey & Jennings, Little Rock, AR, for debtor/plaintiff.

Lance R. Miller, Mitchell Law Firm, Little Rock, AR, Jay Kennedy, Kroger, Gardis & Regas, Indianapolis, IN, K.C. Cohen, Cohen & Malad, Fishers, IN, for defendant.

---

**2.** The debtor wife did not testify.

*SUPPLEMENTAL ORDER*

JAMES G. MIXON, Chief Judge.

On June 25, 1993, the debtor, Jones Truck Lines, Inc., (plaintiff) filed this adversary proceeding against Foster's Truck and Equipment Sales, Inc. (defendant), to recover alleged preferential transfers under 11 U.S.C. §§ 547 and 550 in the sum of $114,-836.00. The court entered a default judgment in favor of the plaintiff on February 4, 1994. The defendant filed a "motion to alter, set aside and for relief from default judgment" on February 11, 1994. A hearing was held on the defendant's motion on March 25, 1994, and the Court took the matter under advisement.

## BACKGROUND

On July 12, 1993, the plaintiff filed its proof of service, stating that a copy of the summons and complaint was mailed to the defendant on June 30, 1993. On July 30, 1993, counsel for the defendant, K.C. Cohen, Esq., of Cohen & Malad, P.C., filed an appearance[1] in the case, and on August 31, 1993, the defendant filed its answer.

On December 3, 1993, the plaintiff filed a motion to strike answer and motion for default judgment alleging that the answer should be stricken as untimely filed. The defendant responded to the motion to strike and a hearing was scheduled for January 7, 1994. Notice of this hearing on the default was sent to counsel for the defendant, K.C. Cohen, Esq., as well as defendant's local counsel, Lance R. Miller, Esq.

Mr. Miller appeared on behalf of the defendant at the January 7, 1994, hearing on the plaintiff's motion to strike answer and for default judgment. Although local counsel made statements in oral argument regarding the reasons Mr. Cohen filed the answer untimely, Mr. Cohen was not present at the hearing to testify. Therefore, the defendant failed to present admissible evidence to explain the reasons for the untimely filing of the answer.

At the close of the evidence at the January 7, 1994, hearing, the Court found that there was proper service on the defendant, the answer was untimely filed, and there was insufficient evidence to deny the entry of default judgment on the basis of good faith mistake or excusable neglect. Therefore, a default judgment was entered on February 4, 1994.

On February 11, 1994, the defendant filed its "motion to alter, set aside and for relief from default judgment." A hearing was held on the defendant's motion on March 25, 1994, at which time the defendant's counsel, Mr. Cohen, did appear and testify. Mr. Cohen acknowledged that he received and read a copy of the summons issued by the court and was aware of the date a responsive pleading to the complaint was to be filed. He also admitted that he was aware that the summons directed that if he did not respond to the complaint relief could be granted against his client by default.

Mr. Cohen testified that he received a letter on August 30, 1993, from plaintiff's counsel notifying him of the default. Immediately after receiving the letter, Mr. Cohen prepared an answer and forwarded it to the court by Federal Express to be filed the next day. Mr. Cohen gave the following testimony regarding the reasons for filing the answer untimely:

Q: Have you given the Court all the reasons that you think the default should be excused? That you presently think the default should be excused?

A: No, I don't think so.

Q: What other reasons do you have?

A: Well, there are a number of things that are set out in my affidavit which is attached to the motion to set aside the default under Rule 60. One of those, which we haven't discussed this morning, is the nature of local practice in the Indianapolis bar and my familiarity with that practice based on my bankruptcy experience. In adversary proceedings, especially ones involving defendants that are out of the geographic jurisdiction of the Court,

---

1. The appearance referred to Mr. Cohen as attorney for the defendant, however, there was no address given for Mr. Cohen either in the body of the appearance or in the signature block.

what's done in our jurisdiction is that the summons will set a pre-trial date. And the summons that I received in connection with this case clearly stated on the cover that the pre-trial date would be set by further order of the Court, which gave me the impression that I had at least up until that time to try to resolve the matter in the fashion that I pursued, which was the correspondence with counsel.

Record at 38–39.

Q: Mr. Cohen, other than your understanding of the Rules of bankruptcy procedure as affected by the way you describe the local practice in Indianapolis, is there anything that prevented you from filing a responsive pleading within the time allotted in the summons that you say you received?

A: Yeah, that was my concern about the creation of additional expense for both parties spent in this case.

Record at 36.

When questioned by the Court regarding his overall practice and experience, Mr. Cohen responded as follows:

Q: Your practice—in your practice overall, do you do much litigation?

A: Very little.

Q: But you do litigation in Federal District Court and State Court?

A: From time to time as it's required.

Q: Do you do some litigation in bankruptcy? Or do you have any experience in litigation in Bankruptcy Court?

A: I have some experience in litigating bankruptcy issues before the Bankruptcy Court.

Q: Now do I understand you to suggest that the local practice in Indiana is that when an adversary proceeding is initiated, that the defendants in the adversary proceeding are not required, or do not routinely file a responsive pleading until such time as the pre-trial is heard?

A: It's not unusual for pleadings to be filed either immediately before or simultaneous with the pre-trial conference. No action is ever taken in an adversary proceeding before that conference is held. The Court holds a conference with either the Judge or the law clerk to ascertain whether there are defenses to the claim, to set out discovery schedules, and to set dates for the proceeding. There wouldn't—

Q: Is it the practice, though, that the answers to complaints are routinely not filed within the time prescribed by the Rules? Is that what you're saying?

A: I wouldn't want to characterize it that way because I really don't know. But what I'm saying is that no action would be taken—. If an Answer is filed the day of a pre-trial or if no Answer is filed, as long as there's been an appearance filed by counsel for a defendant in an adversary, the Court will conduct a pre-trial to determine what the nature of the defense is, whether or not the thing's going to get settled, and if it's going to go forward. The Court would certainly grant at that time, in connection with scheduling the proceeding of the litigation, appropriate extensions for pleadings.

Q: Are the pre-trials scheduled within the time limit to file an answer, typically?

A: Very close to that. Most of 'em, in my experience, will be within the thirty days so that if there are defects in pleadings, they can be cured immediately. That's not unusual for them to be held forty, maybe fifty days out, depending on the nature of the litigation.

Q: Have you ever had any actual case where you were the attorney for the defendant where this practice was employed, that is, no answer was filed before the pre-trial?

A: Oh, absolutely, several times.

Record at 41–43. Mr. Cohen also testified that he did not consult with anyone in Arkansas regarding the local procedures for filing answers in the bankruptcy court in Arkansas.

At the close of the hearing the Court held that the defendant's motion to alter, set aside and for relief from default judgment filed on February 11, 1994, will be treated as a motion for new trial under Bankruptcy Rule 9023 and the Court will consider all the evidence adduced at the hearing in determining whether a default judgment should be entered.

### DISCUSSION

██ Judgment by default may be entered when a party has failed to plead or otherwise defend as provided by the Bankruptcy Rules of Procedure. Fed.R.Bankr.P. 7055. The Court is to exercise judicial discretion in determining whether a default judgment should be entered. *See Otoe County Nat'l Bank v. W & P Trucking, Inc.,* 754 F.2d 881, 883 (10th Cir.1985). The Bankruptcy Rules provide that an answer to a complaint shall be served within thirty days after the issuance of the summons, unless otherwise prescribed by the Court. Fed. R.Bankr.P. 7012. The Court may, for cause shown, allow the time for filing an answer to be enlarged where the failure to act was the result of excusable neglect. Fed.R.Bankr.P. 9006(b)(1).

The Supreme Court in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership,* — U.S. —, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) described the test for determining excusable neglect as follows:

> This leaves, of course, the Rule's requirement that the party's neglect of the bar date be "excusable." It is this requirement that we believe will deter creditors or other parties from freely ignoring court-ordered deadlines in hopes of winning a permissive reprieve under Rule 9006(b)(1). With regard to determining whether a party's neglect of a deadline is excusable, we are in substantial agreement with the factors identified by the Court of Appeals. Because Congress has provided no other guideposts for determining what sorts of neglect will be considered "excusable," we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include, as the

Court of Appeals found, the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Pioneer,* — U.S. at —, 113 S.Ct. at 1498.

Applying the factors from *Pioneer* to the facts in this case, the Court finds that Mr. Cohen's actions do not meet the standards of excusable neglect contemplated by Bankruptcy Rule 9006(b)(1).

Although the danger of prejudice to the defendant in granting default judgment in this case is substantial, the Court is instructed by *Pioneer* that this factor alone cannot be used to justify excusable neglect. In *Pioneer* the Court stated:

> In other contexts, we have held that clients must be held accountable for the acts and omissions of their attorneys. In *Link v. Wabash R. Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), we held that a client may be made to suffer the consequence of dismissal of its lawsuit because of its attorney's failure to attend a scheduled pretrial conference. In so concluding, we found "no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client." *Id.,* at 633, 82 S.Ct., at 1390. To the contrary, the Court wrote:
>
> > "Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'"

*Pioneer,* — U.S. at —, 113 S.Ct. at 1499.

In analyzing the facts of this case to the second and third factors given in *Pioneer,* the evidence supports a finding that the length of the delay and its potential impact

on judicial proceedings is not significant, and the movant has acted in good faith in these proceedings. The evidence regarding the final factor, however, concerning the reason for the delay and whether the delay was within the reasonable control of the movant, weighs heavily against the defendant.

As the Supreme Court stated in *Pioneer*:

There is, of course, a range of possible explanations for a party's failure to comply with a court-ordered filing deadline. At one end of the spectrum, a party may be prevented from complying by forces beyond its control, such as by an act of God or unforeseeable human intervention. At the other, a party simply may choose to flout a deadline. In between lie cases where a party may choose to miss a deadline although for a very good reason, such as to render first aid to an accident victim discovered on the way to the courthouse, as well as cases where a party misses a deadline through inadvertence, miscalculation, or negligence....

... [B]y empowering the courts to accept late filings "where the failure to act was the result of excusable neglect," Rule 9006(b)(1), Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.

*Pioneer*, —— U.S. at —— – ——, 113 S.Ct. at 1494–95.

Mr. Cohen's actions fall near the far end of the spectrum and constitute a willful flaunting of the deadline. He admitted that he was aware of the date a responsive pleading to the complaint was to be filed, but chose to ignore this deadline based on his understanding of a "local custom" in Indianapolis to not file an answer until after a pretrial conference is held. Mr. Cohen intentionally disregarded the applicable rules of civil procedure that govern civil litigation. The most elementary rule of civil procedure is that a responsive pleading to a complaint and summons must be timely filed to avoid entry of a default judgment. To allow Mr. Cohen's action to fall under the phrase "excusable neglect" would be contrary to the purpose of

"deter[ring] creditors or other parties from freely ignoring court-ordered deadlines in the hopes of winning a permissive reprieve under Rule 9006(b)(1)." *Pioneer*, —— U.S. at ——, 113 S.Ct. at 1498. Mr. Cohen's reasons for filing an untimely answer on behalf of his clients do not constitute excusable neglect as contemplated in Bankruptcy Rule 9006(b)(1). Therefore, for the reasons stated, the defendant's motion for new trial is denied.

IT IS SO ORDERED.